## ANNEKE v. WILLCUTS.

District Court, D. Minnesota, Fifth Division.
Sept. 30, 1932.

P. C. Schmidt and Abbott, MacPherran, Dancer, Gilbert & Doan, all of Duluth, Minn., for plaintiff.

M. W. Goldsworthy, of Washington, D. C., and Raymond W. Johnston, of St. Paul, Minn., for defendant.

CANT, District Judge.

The fact that in any case of this kind, the deceased may have had a policy of distributing his property to members of his family during his lifetime, is a circumstance, which, with many others, should be taken into account in determining whether any particular distribution was made in contemplation of death as that term is understood in the law. The fact that he had pursued such policy is not at all controlling. In making the later distributions, at least, the carrying out of such a policy might easily concur with transfers made in contemplation of death, and in actual practice is very likely to do so. The fact that a man has been distributing his property to members of his family throughout a period of years, carries with it no persuasive suggestion that various of the later transfers, at least, were not made in contemplation of death. Indeed, it is a matter of common knowledge that even the earlier distributions are often induced in part by a desire to evade the payment of an estate or inheritance tax. Even such earlier transfers, therefore, are in a way related to the thought of death, which may occur at any time, but when they are made in the fullness of health and strength, they are not within the law. There is no occasion for deceiving ourselves. Every one who thinks a little, knows that as old age comes on and infirmities increase, this sense of approaching death becomes appreciably emphasized, not necessarily in an oppressive way, but as a necessary conscious development attendant upon men's experience as they go on. Inevitably, therefore, and this, no matter whether a man has been making past distributions of his property or not, and no matter whether a particular distribution which he is about to make has been under consideration for a considerable period or not, a time does finally come when transfers of the character here in question must be held to have been made in contemplation of death. That is, consciously, half consciously, or otherwise, the grantor realizes that final dissolution is in the offing, and that, while there is much uncertainty about such things, and while life may continue for some time to come, there is ground for apprehending that death may not long be delayed and for such reason, that the transfer should be made. With all this in mind, perhaps clearly, perhaps somewhat vaguely, but sufficiently impelling to operate as one of the substantial inducing causes, or motives, the transfer is made. The past policy of the grantor, or his having considered making the particular transfer for some time in advance concurs with the circumstance that the transfer is made in contemplation of death. If the latter is one of the substantially inducing elements entering into the transfer, the tax will attach. If the rule were otherwise, a man known to be suffering from a progressive and incurable malady, and who had not long to live, but who had such a policy or plan, might continue with the distribution of his estate up to the day of his death, and all such distributions escape the payment of a tax. There have already been too many cases which have nearly approached a holding as reprehensible as that would be. No matter what the policy, and no matter what the plans, if there was such indefiniteness or uncertainty in connection therewith, that one of the substantially inducing causes or motives for closing the matter when it was closed, was the contemplation of death, the reason for the tax then applies and it would not be within the power of the court to give relief therefrom.

In order that the tax shall attach in such cases, it is not at all necessary that the gran-

tor shall have definitely in mind that he is making an attempt to defeat the imposition thereof; nor is it at all necessary that he feel assured that death must follow within a brief period of time. Where a man's age and physical conditions are such, however, that, ordinarily, he would realize that death might not be far away, it would not be complimentary to his memory to suggest that he had reached such a stage of mental obtuseness that he did not realize that fact.

Under the evidence here, the conclusion that the contemplation of death was the dominant motive in making the transfers in question cannot well be avoided.

In the opinion of the court, the foregoing considerations apply to the case at bar, and, when so applied, they require adherence to the findings and conclusions heretofore filed herein. United States v. Wells, 283 U. S. 102, 117, et seq., 51 S. Ct. 446, 75 L. Ed. 867; Delaware Trust Co. v. Handy (D. C.) 53 F.(2d) 1042, 1048; Rea v. Heiner (D. C.) 6 F.(2d) 389.